UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14031-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NICHOLAS ANTONIO ZAMUDIO-HERNANDEZ,

    Defendant.
_____/

### DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AND SENTENCING MEMORANDUM

Defendant, NICHOLAS ANTONIO ZAMUDIO-HERNANDEZ, through undersigned counsel, respectfully moves this Court for a downward variance and submits the following memorandum in support of sentencing to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary, to comply with" the mandates of 18 U.S.C. § 3553(a).

In *Booker v. United States*, 543 U.S. 220 (2005), the Supreme Court excised the statutory provision in 18 U.S.C. § 3553 that made the Sentencing Guidelines mandatory, thereby rendering them advisory. *Id*. at 244-46. While this Court must still correctly calculate the guideline range, there is no presumption that a guideline sentence is a reasonable and appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Court must make an individualized assessment based on the facts presented. *Id*. The ultimate goal is a reasonable sentence, *United States v. Talley*,

1

431 F.3d 784, 785 (11th Cir. 2005), and one which is sufficient, but not greater than necessary to comply with the purposes of sentencing outlined in 18 U.S.C. §3553(a)(2). This Court may not presume the Guidelines range is reasonable, but instead, must make an individualized assessment based on the facts presented. *Gall* at 50 (2007). Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

When fashioning such a sentence, the sentencing court must consider the factors set out in 18 U.S.C. § 3553(a). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the advisory guideline range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities; and
> (7) the need to provide restitution to any victims of the offense.

That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *See Kimbrough v. United States*, 552 U.S. 82, 101 (2007) citing 18 U.S.C. § 3553.

Under the 18 U.S.C. § 3553(a)(2)(B), any sentence the Court imposes must afford an adequate deterrence to criminal conduct. Here, the offenses of conviction, production of visual depictions involving sexual exploitation of minors, in violation of 18 U.S.C. § 2251(a) is punishable by a range of fifteen (15) to thirty (30) years imprisonment; and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) is punishable up to twenty (20) years imprisonment. By setting these penalties, Congress has determined that there will be production cases that do not warrant a maximum prison sentence, and that such a sentence would afford an adequate deterrence to criminal conduct. However, given the almost universal and automatic enhancements under USSG § 2G2.1, it is virtually impossible to have an advisory sentencing guideline range of fifteen (15) years. It has been a uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crimes and punishment to ensue. *Pepper v. United States*, 131 S.Ct. 1229, 1239-40 (2010).

**I.    THE STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A) SUPPORT A DOWNWARD VARIANCE IN MR. ZAMUDIO-HERNANDEZ' CASE.**

   **A.    Mr. Zamudio-Hernandez' "history and characteristics" and "nature and circumstances" of the offense are mitigating factors under 18 U.S.C. § 3553(a)(1).**

Looking first at the **history and characteristics** of Zamudio-Hernandez, he is currently nineteen (19) years old. In his home life, Zamudio-Hernandez was raised by his mother; however, he also lived with family friends over the years. (PSI ¶ 54). Zamudio-Hernandez' father was wholly absent and uninvolved in his upbringing

because he never met his father. Zamudio-Hernandez' father tragically died in a car accident while Zamudio's mother was pregnant with him. (PSI ¶ 53). During his pre-teen years, Zamudio-Hernandez resided with his aunt who was a drug addict and emotionally and verbally abusive to him. (PSI ¶ 56). He was also sexually abused and bullied by his aunt's children. *Id*.

Zamudio-Hernandez was diagnosed with attention deficit hyperactivity disorder when he was in kindergarten and was prescribed medication to control his condition. As a child, he also had behavioral issues. Desperate to fit in and find the emotional support and sense of normalcy missing from his home life, notably Zamudio-Hernandez tried to apply himself at school even after he was retained in the same grade on two occasions. At the time of his arrest, he was enrolled at Vero Beach High School in Vero Beach. (PSI ¶ 67). Zamudio-Hernandez is interested in obtaining his (GED) diploma. *Id*.

Zamudio-Hernandez was referred for an assessment of risk for future sexual offending, diagnostic impressions, and treatment needs and amenability. (Evaluation by Dr. Sheila Rapa, Psy.D., Oct. 14, 2021)[1] (hereinafter "Evaluation"). The Evaluation is an assessment of Zamudio-Hernandez for a psychological evaluation and risk assessment.

The **nature and circumstances** of the offense show that Zamudio-

---

[1] Due to the nature and confidential information of the psychological evaluation of Mr. Zamudio-Hernandez, the Evaluation will be filed as an exhibit under seal in a separate pleading. In order to ensure that this Court and government counsel (AUSA Justin Hoover) receive the Evaluation in a timely manner, copies will also be emailed electronically.

Hernandez engaged in oral sex with a minor child and video recorded the incident on his cell phone (production of visual depictions involving sexual exploitation of minor); Zamudio-Hernandez also took photographs of the minor child's genital area (possession of visual depictions involving sexual exploitation of minors). (PSI ¶ 15). Zamudio-Hernandez acknowledges and recognizes the severity of the charges and certainly in no way attempting to minimize the facts in the above-styled case. Indeed, because of the gravity of the offense conduct, Zamudio-Hernandez accepted responsibility.

Even with the three-level reduction for acceptance of responsibility, Zamudio-Hernandez' guidelines imprisonment range remains 360 months at the low end of the guideline range, which is also the maximum penalty for production of child pornography (Count I). Zamudio-Hernandez has no prior criminal record, he immediately and fully cooperated with law enforcement, pled guilty and admitted to the factual proffer statement. (DE 35). Undersigned counsel respectfully urges this Court to take this into consideration and fashion a sentence that would give Zamudio-Hernandez some tangible benefit for his decision to plead guilty.

  **B. This Court is empowered to vary downward to account for the double-counting inherent in the PSI's assessment of the five-level enhancement under § 4B1.5.**

The base offense level for Zamudio-Hernandez is 32 because the offense involved production of child pornography, pursuant to U.S.S.G. § 2G2.1(a). (PSI ¶ 33). The offense level is increased by 2-levels for the commission of a sexual act or sexual contact (oral sex); 2-levels for the use of a computer to persuade, induce, entice, or coerce, a minor to engage in sexually explicit conduct; and five-levels, pursuant to §

5

4B1.5(b)(1). (PSI ¶¶ 35, 37, 42). The aforementioned five-level enhancement was applied to Zamudio-Hernandez. After the total offense level was calculated, the probation officer then recommended a five-level enhancement under § 4B1.5(b)(1) for engaging in a "pattern of activity involving prohibited sexual conduct." (PSI ¶ 42). According to the conduct charged in the indictment, Zamudio-Hernandez engaged in one episode of ongoing conduct, and the use of both § 2G2.1 and § 4B1.5(b)(1) constituted double-counting because both chapters address the same criminal conduct of the production of child pornography. Using both enhancements in Chapter Two and Four of the Guidelines Manual punished Zamudio-Hernandez twice for the same conduct. Undersigned counsel recognizes that the enhancements in both sections for the same criminal conduct, thus imposing more punishment are permissible. The enhancement in § 4B1.5(b)(1), with no other changes to the PSI's sentencing guidelines, increases Defendant's total offense level from 37 to 42, and his advisory guideline range from 210 to 262 months to 360 months to life. However, the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 360 months to 600 months, § 5G1.2(b). (PSI ¶ 78). To increase his advisory guideline range by almost twelve and a half years is unreasonable and warrants a downward variance and the Court may weigh the calculation of the guideline range.

    C.    **The need for the sentence imposed "to afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner" under 18 U.S.C. § 3553(a)(2)(B)-(D) also militates in favor of a downward variance.**

6

Placement and participation in the Bureau of Prison's residential sex offender treatment program will protect Zamudio-Hernandez and ensure that he receives the treatment needed to further reduce his recidivism risk. Congress enacted the Prison Rape Elimination Act (PREA) to prevent incidents of sexual violence in prison. Pub. L. 108-79, 117 Stat. 972 (2003). As discussed in greater detail below, Zamudio-Hernandez will be uniquely vulnerable to physical and sexual violence during the term of his imprisonment due to the offense of conviction. Because he will therefore serve a more onerous, isolating, and hazardous term of imprisonment than a defendant convicted of another offense, this Court may weigh those factors into its consideration of a downward variance.

Because Zamudio-Hernandez will be a convicted sex offender, he will be "at the absolute bottom of the implied prison hierarchy," even below "snitches." Hollie McKay, *Pedophiles in Prison: The Hell that Would Have Awaited Epstein if He'd Stayed Behind Bars*, FoxNews.com (Aug. 21, 2019) (citing interviews with a former inmate who also noted that the "Bureau of Prisons (BOP) talks a good game, but you won't ever provide a safe haven for a [sex offender] in custody"), *available at* https://www.foxnews.com/us/jeffrey-epstein-pedophiles-prison-hell (last accessed Dec. 27, 2021). By way of example, the article summarized several recent murders of convicted sex offenders in federal and state custody, including (1) "an inmate serving a 40-year sentence for running a global child-pornography ring [who] was slain at a Michigan federal detention center;" (2) "David Oseas Ramirez[, who] was beaten and drowned in his jail-cell toilet by his cellmate in Florida's Duval County Jail;" (3)

7

"Clinton Don Simpson was killed at the age of 76 by a fellow prisoner in Texas due to allegations from a decade earlier that Simpson sexually abused more than a dozen children in his backyard; (4) a "former cop in Michigan – convicted of sexually assaulting a nine-year-old girl – was strangled by his cellmate;" and (5) an accused pedophile in California was killed by an inmate who justified it as "his public service." *Id.*

A recommendation by this Court that the Bureau of Prisons designate Zamudio-Hernandez to a residential sex offender treatment program would enable him to participate in "high intensity programming for a period of 12 to 18 months" "five days per week" for while residing in a "residential housing unit where they work to reduce their risk of future offending." Federal Bureau of Prisons, Custody & Care: Sex Offenders, *available at* *https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp* (last accessed Dec. 27, 2021).

> **D. A downward variance would further "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" while "reflect[ing] the seriousness of the offense," "promot[ing] respect for the law," and "provid[ing] just punishment for the offense" under 18 U.S.C. § 3553(a)(2)(A) and (a)(6).**

Section 3553(a) mandates that a sentencing court both consider "the history and characteristics of the defendant" and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In these respects, the following decisions from federal courts provide some guidance here.

8

In *United States v. Dean*, 635 F.3d 1200 (11th Cir. 2011), the defendant received a 360-month guideline sentence after he pled guilty to production of child pornography and possession of child pornography. The court described the underlying facts:

> Dean sexually abused his stepdaughter from the time she was age eleven until she was age twenty-seven, and he recorded 245 episodes of abuse on video. Dean produced at least fifty-eight of these recordings while the victim was a minor. The recordings show Dean digitally penetrating her vagina and engaging in oral-vaginal contact with her while she was asleep at age eleven. The victim became conscious of the abuse at age thirteen, when Dean began to ask her to undress in front of him. The abuse progressed to the point that, before the victim had reached eighteen years of age, Dean had instructed his own minor daughters to record videos of the victim naked, performed oral and vaginal sex on her, and invited another adult male to engage in sexual intercourse with her. In some of the videos of the victim as a minor, Dean beat her to the point that she cried and begged him to stop.

*Id.* at 1202-03. Dean's victim endured years of abuse. *Id.* at 1203. She required three rectal surgeries to repair damage Dean did to her during these encounters. *Id.* He coerced her compliance with threats to kill her, her mother, and her husband. *Id.* His final act of abuse occurred when he tied her to a wall and violently penetrated her vagina with a bottle. *Id.*

In *United States v. Irey*, 612 F.3d 1160 (2010), the circuit court determined the district court should have imposed a guideline sentence of 360 months, rather than the 210 months sentence it did impose as a variance from the guideline, after the defendant pled guilty to production of child pornography. In that case, the defendant, a man in his 40s, travelled to Asia to have sex with children. *Id.* at 1166. Over a 4-to-5-year period, he had sex with more than 50 of them, some as young as 4 years old. *Id.* He went to brothels and paid to have sex with them, typically buying

9

two or three at a time. *Id*. He videotaped and photographed his exploits, saving them to view later for his own viewing pleasure and to distribute so he could gain access to child pornography websites. *Id*. at 1167. The court described the images:

> Irey's defilement of the little children did not stop at rape, sodomy, and humiliation. He also tortured them. There are images of Irey inserting a plastic green/yellow glow stick, dildos, cockroaches and candy in the vaginal cavity of prepubescent Asian females. Some images show Irey inserting a plastic tube into the vagina of a prepubescent Asian female. Several of the images show the plastic tube containing cockroaches crawling into the vagina of these children. One image shows him performing vaginal intercourse on a prepubescent girl and [i]mbedded on the image [in all capitals] is the phrase: "Big Cock Push Bug Deep Into 9 Yo Girl, She Hurt in Pane."

Id. at 1167-68 (quotation marks omitted).

More recently, the Eleventh Circuit upheld guideline 360-month sentences in in *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019) and *United States v. Harrelson*, 781 Fed.Appx. 841 (11th Cir. 2019). In *Fox*, the defendant sexually abused his two granddaughters, ages 11 and 9, on a nightly basis for almost a year. In *Harrelson*, 781 Fed.Appx. 841 (11th Cir. 2019), the defendant made multiple videos of himself having sex with a nine-year old girl. Another case involving actual sexual abuse of minors in the Eleventh Circuit reveal a sentence of forty (40) years for significantly more gruesome conduct. *See, e.g., United States v. Frank*, 599 F.3d 1221, 1227-28 (11th Cir. 2010) (affirming 40-year sentence, after jury trial, for defendant who had twice traveled to Cambodia, where he paid four girls who were between the ages of approximately eleven and fifteen to engage in sexual acts with him and to take thousands of sexually explicit pictures of those acts); *United States v. McDade*, 399 F. App'x 520, 522, 524, 525 n.4 (11th Cir. 2010).

## **CONCLUSION**

For the foregoing reasons, Mr. Zamudio-Hernandez respectfully requests that the Court impose a downward variance sentence in his case as it would be sufficient but not greater than necessary in light of the nature and circumstances of the offense, and his history and characteristics. Such a sentence would provide specific and general deterrence, promote respect for the law, and ensure just punishment while avoiding any unwarranted sentencing disparities.

                                        Respectfully submitted,

                                        MICHAEL CARUSO
                                        FEDERAL PUBLIC DEFENDER

By:    *s/Panayotta Augustin-Birch*
        Panayotta Augustin-Birch
        Assistant Federal Public Defender
        Florida Bar No. 359970
        109 North Second Street
        Fort Pierce, Florida 34950
        Tel:  772-489-2123
        E-Mail: panayotta_augustin-birch@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on December 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Panayotta Augustin-Birch,* AFPD
Panayotta Augustin-Birch